UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,
        Plaintiff,

v.  **MEMORANDUM OF LAW & ORDER**
Criminal File No. 16-00338(1) (MJD)

ADAM JOHN BURKE,
        Defendant,

Katharine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.

Joshua S. London, London Defense, Counsel for Defendant.

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for First Step Act Time Credit and Early Termination of Supervised Release.  (Doc. 470.)  Defendant asserts that the Court should apply remaining First Step Act good time credits that he earned in prison to shorten his term of supervised release or, in the alternative, that the Court should grant him early termination of supervised release under 18 U.S.C. § 3583(e).  The Government opposes Defendant's motion.  (Doc. 476.)  Probation states that Defendant has not been on supervised release long enough to seek early termination.  (Doc. 477.)

1

## II.     BACKGROUND

The background of this case is well-known to the Court and will be truncated here.  Defendant managed a scheme to commit chiropractic-care fraud, employed "runners" to help him do so, and committed perjury while testifying at trial.  A jury found Defendant guilty of mail fraud and conspiracy to commit mail fraud.  The Court sentenced Defendant to 90-months in prison followed by two-years supervised release.  Defendant earned a total of 749 days good time credit and credit under the First Step Act ("FTCs") during his incarceration due to enrolling in eligible programs such as the RDAP program.

Defendant was released to home confinement on April 24, 2022 under the terms of the CARES Act and spent the final 13.5 months of his incarceration sentence at home.  (Doc. 470 ¶ 4.)  Since he was transferred to home confinement, Defendant has been working fulltime for Business Equities Group as "Business Development Manager" for the Commercial Equities Group of Minneapolis.  (Id. ¶ 8.)  Defendant "maintains and develops for sale a series of commercial buildings owned and operated by his employer."  (Id.)  Defendant began supervised release on May 19, 2023.  (Id. ¶ 4.)

### III. DISCUSSION

#### A. Defendant's Request to Apply His FTCs to His Term of Supervised Release

Defendant argues that the BOP applied one year of his FTCs to his previously-calculated prison release date but has failed to apply the remainder of his FTCs to his term of supervision. Thus, Defendant asks that the Court recalculate his supervised release termination date from May 19, 2025 to May 30, 2024. If the Court adopts Defendant's calculations and grants Defendant's motion, Defendant's term of supervised release will terminate immediately because Defendant will have overserved his term of supervised release.

However, the Court denies this request because the plain language of the statute states that residual FTCs "shall be applied <u>toward</u> time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners . . . <u>into</u> prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). More importantly, <u>Dyer v. Fulgham</u>, No. 1:21-cv-0299 (CLC/CHS), 2022 WL 1598249 (E.D. Tenn. May 20, 2022), the case relied on by Defendant for the proposition that 18 U.S.C. § 3632(d)(4)(C) requires that any remaining FTCs an inmate has accrued must apply toward

3

reducing the inmate's time on supervised release is an outlier that has been soundly rejected by an ever-growing number of courts since its issuance. See Davis v. Rardin, No. 22-CV-2854 (JRT/DLM), 2024 WL 209172, at *5-6 (gathering cases rejecting Dryer) (D. Minn. Jan. 19, 2024), R&R adopted, 2024 WL 841268 (D. Minn. Feb. 28, 2024); see also Guerriero v. Miami RRM, No. 24-10337, 2024 WL 2017730, at *3 (11th Cir. May 7, 2024) ("Every case to address this issue has agreed with the interpretation set out above, save only one: Dyer v. Fulgam, 2022 WL 1598249, at *1 (E.D. Tenn. May 20, 2022), appeal dismissed as moot, Dyer v. Fulgam, No. 22-5608 (6th Cir. June 6, 2023)").

The reasoning of Davis is persuasive, and the Court adopts it as its own:

> If § 3632(d)(4)(C) provided that time credits shall be applied <u>to reduce a term of supervised release</u>, then the Court might agree with the decision reached in Dryer. But the statute provides that time credits shall be applied <u>toward</u> supervised release. Use of the word "toward" means that credits can be applied to bring "time in prerelease custody or supervised release" closer to occurring because credits applied "toward" something generally means to bring that something closer to happening. Black's Law Dictionary (11th ed. 2019) (defining "toward," in relevant part, as "in the direction of; on a course or line leading to (some place or something)").

Davis, 2024 WL 209172, at *6 (quoting United States v. Calabrese, No. 1:11-cr-00437, 2023 WL 1969753, at *2 (N.D. Ohio Feb. 13, 2023)).

4

> Beyond that, this construction aligns with the applicable regulation, which permits FTCs to be applied toward early <u>transfer</u> to supervised release, not to shortening of supervised release. And finally, allowing FTCs to reduce a term of supervised release would contravene the purpose of supervised release, which serves rehabilitative ends distinct from those served by incarceration. The First Step Act modified much when it comes to sentencing and detention, but it cannot reasonably be read as potentially eliminating supervised release, particularly for those serving the longest sentences who may need supervised release to assist . . . in their transition to community life.

<u>Id.</u> (citations omitted) (ellipses and emphasis in original).

Accordingly, the Court finds that 18 U.S.C. § 3632(d)(4)(C) cannot be used to abbreviate Defendant's term of supervised release.

### B.    Defendant's Request for Early Termination of Supervised Release Under 18 U.S.C. § 3583(e)

> The court may, after considering the factors set forth in section 3553(a) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1).

Defendant argues that applying his 384 days of credit to his supervised release is necessary to avoid unwarranted sentencing disparities under § 3553(a)(6) because "[a]n offender identical to Mr. Burke in every way, but whose FTCs were all applied to his sentence, would be granted an additional 384 days

5

of credit, and would be less than two months away from the end of his supervised release." (Doc. 470 ¶ 22.) He also argues that the Court must consider the need for victims to receive restitution under § (a)(7) and his "progress [toward paying restitution] would be substantially enhanced by ending the work and travel restrictions associated with supervised release. (Id. ¶ 24.)

Defendant further argues that his record shows rehabilitation and that his punishment thus far has been deterrence enough because he has no probation violations and steady work. (Id. ¶¶ 24, 25.) Therefore, he argues that the objectives of sentencing have been served and the likelihood of him reoffending are low under § (a)(2) and the only goal that would be accomplished by having him serve out his supervised release would be retribution.

Finally, Defendant asserts that the Court should consider Defendant's character and the support he has from his extended family and his wife who has "her own successful career" and who has "been a source of guidance" to him during "punishment and rehabilitation" (Id. ¶ 23.)

The Court finds that neither the conduct of Defendant nor interests of justice warrant terminating Defendant's period of supervised release. See 18 U.S.C. § 3583(e)(1).

Defendant was the mastermind of a chiropractic-care fraud scheme to defraud auto insurance companies and oversaw a group of runners. Defendant committed perjury during trial. Defendant's original restitution was $991,530.00. The Court found that in committing his crime, Defendant abused his position of trust as a chiropractor. Defendant's crime spanned a period of years. The Government represents that as of mid-April, less than $6000 of the restitution in this case had been repaid.

Although Defendant states that he can better repay his restitution if he is allowed to travel for work, the Court finds that supervised release is the best way to guarantee that defendants pay their restitution obligations. This is especially true in this case, given that Defendant continued to dissemble and attempt to "game the system" while incarcerated and that Defendant has never even filed a motion to be allowed to travel for work during his supervised release. (See Doc. 451 (denying Def.'s Mot. Compassionate Release because he purposely increased his BMI and refused the COVID 19 vaccine during the pandemic despite his

previous career in the healthcare field).) Moreover, while the Court commends Defendant on his consistent employment and his lack of violations so far on supervised release, this is merely what the Court expects defendants to do on supervised release. Defendant is also lucky to have strong family ties and support to help him with his reintegration into society. Many are not so fortunate.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for First Step Act Time Credit and Early Termination of Supervised Release **[Doc. 470]** is **DENIED**.

Dated:   July 23, 2024                              s/Michael J. Davis
                                                    Michael J. Davis
                                                    United States District Court